UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

14 CV 9324

------------------------------------------------------------X

TRISHA MCELROY,

                Plaintiff,

        -against-

CHILDREN'S RESCUE FUND, ICAHN HOUSE
EAST, LLC d/b/a CRF-HOUSE EAST, LLC,
CRF-CLUSTER MODEL PROGRAM, LLC, and
STANLEY W. BRICE,

                Defendants.

------------------------------------------------------------X

**COMPLAINT**

**JUDGE PAULEY**

**JURY TRIAL
DEMANDED**

RECEIVED
NOV 24 2014
U.S.D.C. S.D. N.Y.

      Plaintiff Trisha McElroy ("McElroy" or "Plaintiff"), by her attorneys, Beranbaum

Menken LLP, complains of Defendants Children's Rescue Fund, Icahn House East, LLC

d/b/a CRF-House East, LLC, CRF-Cluster Model Program, LLC (collectively "CRF"),

and Stanley W. Brice ("Brice") as follows:

## NATURE OF THE ACTION

      1.    McElroy brings this action against her former employer, CRF, and its

President, Brice, alleging violations of the Fair Labor Standards Act ("FLSA") and New

York Labor Law ("NYLL").

      2.    Specifically, Plaintiff alleges that Defendants violated the FLSA, 29

U.S.C. § 215(a)(3), and NYLL § 215(1)(a), by discriminating against her and ultimately

terminating her employment in retaliation for her truthful testimony in a lawsuit, brought

by employees alleging Defendants' failure to pay them overtime wages.

      3.    Defendants also violated the FLSA, 29 U.S.C. § 201, *et seq.* and the

various wage orders promulgated by the U.S. Department of Labor and codified in 29

C.F.R. § 552 *et seq.*, as well as NYLL Articles 6 and 19 and, including but not limited to,

§§ 198-b and 193, and various wage orders promulgated by the New York State Department of Labor and codified in 12 N.Y.C.R.R. §§ 137-43, by failing to pay her overtime wages as required by law.

4. Plaintiff is entitled to recover actual and liquidated damages, injunctive and declaratory relief, prejudgment interest, and reasonable attorneys' fees and costs pursuant to the applicable laws.

## JURISDICTION AND VENUE

5. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1337, and supplemental jurisdiction over Plaintiff's state law claim pursuant to 28 U.S.C. § 1367. In addition, the Court has jurisdiction over Plaintiff's claim under the FLSA pursuant to 29 U.S.C. § 216(b).

6. Venue is proper in the Southern District of New York pursuant to 28 U.S.C. § 1391(b).

7. This Court has the authority to grant declaratory relief pursuant to 28 U.S.C. §§ 2201 and 2202 and applicable state and local law, rules, and regulations.

## PARTIES

8. McElroy is an adult individual who resides in Westchester County, New York. At all times relevant to this lawsuit, Plaintiff was an "employee" of Defendants within the meaning of the FLSA and NYLL.

9. CRF is a charitable organization providing social services in the New York City area and organized under New York law that maintains an office at 1520 Brook Ave., Bronx, New York.

10. At all times relevant to this action, Defendant Brice has been the President

of CRF, has exercised operational control over the remaining Defendants, and has exercised control over Plaintiff's hiring and firing, the conditions of her employment, her work schedule, the rates and methods of her wages, and the maintenance of her employment records.

## FACTS

11.     Before joining CRF, Plaintiff was employed at JPMorgan Chase for 15 years as a Vice President, Financial Project Manager.

12.     Beginning June 2004, Plaintiff worked as CRF's Director of Human Resources, holding the position for over nine years.

13.     Defendants had a policy of improperly classifying their employees as overtime exempt employees under the FLSA and NYLL and not paying them for the substantial overtime hours they worked.

14.     Aside from maintenance and security workers, Defendants' employees were all paid via an annual salary.

15.     Defendants' employees received a paycheck bi-weekly, which did not contain the hours they worked.

16.     Despite allegedly paying their employees via a set salary each week, Defendants had an express policy, which they frequently applied, of deducting from an employee's salary if that employee could not work an entire day.

17.     Defendants' employees were required to log-in the time they worked via a scan-in/scan-out system.

18.     Nevertheless, Defendants' employees never received pay for more than 8 hours a day even though Defendants deducted from their pay if they worked less than 8

hours.

19.   Specifically, if an employee began work after his or her assigned starting time or had to leave work early, Defendants deducted the corresponding amount from the employee's paycheck or from their vacation, sick, or holiday days.

20.   Indeed, successive versions of the employee handbook provided to Defendants' employees states expressly that their pay will be docked if employees are late to work.

21.   Each of these employee handbooks states that "after a five-minute grace period, pay will be deducted as follows:

    a.      6 minutes late = 15 minutes loss of pay;

    b.      16 minutes late = 30 minutes loss of pay;

    c.      31 minutes late = 45 minutes loss of pay;

    d.      46 minutes late = 60 minutes loss of pay"

22.   Defendants followed this policy and made extensive deductions from allegedly salaried employees' pay.

23.   By making such deductions from the pay of salaried employees, Defendants, as a matter of law, converted them into hourly employees entitled to premium overtime wages.

24.   Defendants failed to pay overtime wages for hours worked in excess of 40 per week to Plaintiff and other salaried employees whose pay received deductions.

25.   Employees frequently complained to Plaintiff that their pay was deducted but that they were not compensated for their overtime hours.

26.   Plaintiff sent Brice an internal memo noting that employees were upset

that they did not receive pay for their overtime hours, but had their pay docked when they came late to work.

27.     Despite the employees' complaints, Defendants' policy of deducting from their paychecks continued unabated.

28.     Before March 2014, Plaintiff had never been written up for any infraction.

29.     Her performance was excellent, as reflected by the consistent raises she received.

30.     Plaintiff's successful tenure as CRF's Human Resources Director dramatically changed after three former CRF employees, on behalf of themselves and similarly situated employees, brought a lawsuit in federal court for violations of federal and state overtime laws against Icahn House West, LLC and affiliated CRF entities, as well as Brice and other CRF officials, including Plaintiff, individually. *See Chapman-Green et al. v. Icahn House West, LLC et al.*, No. 1:11-cv-01190-SAS, in the United States District Court, Southern District of New York. The plaintiffs alleged that CRF routinely made deductions from the wages of salaried employees which, as a matter of law, changed their status to non-salaried employees and entitled them to premium overtime wages.

31.     The *Chapman-Green* plaintiffs compelled McElroy's appearance at a deposition on May 25, 2012, where she truthfully testified under oath about CRF's practice of making deductions from salaried employees' wages for lateness and other reasons. She admitted that she, too, had had her wages docked and that she had informed Brice and other members of CRF's senior management that CRF's practice of docking salaried employees' wages was illegal. In response to the *Chapman-Green* plaintiffs'

document demand, McElroy also produced documentation of communications with Brice and other CRF officials in which she stated that CRF's docking practices were illegal and Brice responded that CRF would "take [their] changes with the Department of Labor."

32.     The testimony of McElroy, as CRF's highest ranking Human Resources official, was undoubtedly highly prejudicial to CRF's position in the *Chapman-Green* litigation, and on February 27, 2013, CRF entered into a Stipulation of Dismissal agreeing to pay the plaintiffs damages in excess of $100,000. *See Chapman-Green et al. v. Icahn House West, LLC et al.*, No. 1:11-cv-01190-SAS, in the United States District Court, Southern District of New York.

33.     Soon after her deposition, McElroy became a marked employee, subject to escalating retaliation by Defendants.

34.     Brice and Senior Vice President Nancy Melendez, the very people Plaintiff reported to, ostracized and stopped speaking to her.  In November 2013, despite her excellent record, CRF demoted Plaintiff, giving her the reduced titled of Human Resources Manager, cutting her salary by $10,000, moving her office to a less desirable location, and installing George Lino as a co-equal Human Resources Manager despite Plaintiff's greater seniority and qualifications.

35.     In further retaliation for her testimony, CRF disciplined Plaintiff without any legitimate cause.  In March 2014, a Senior Case Manager employed by Defendants was arrested in connection with a domestic violence dispute.  Without bothering to give any explanation, CRF put Plaintiff on administrative leave and barred her from the premises for three days while it conducted an "investigation."  Upon Plaintiff's return, Brice circulated a memo – widely copied to members of senior management – stating that

she had been suspended for engaging in "Unsafe Conduct" in violation of CRF's employee handbook. Brice then effectively demoted Plaintiff, a second time, by directing her to report to Lino – her nominal equal – and "follow his leadership pertaining to all human resources for Children's Rescue Fund." This was her second demotion in less than six months.

36.     The "Unsafe Conduct" that Plaintiff was accused of was hiring the individual the previous year when – unbeknownst to her or CRF – he had been convicted of possession of marijuana *20 years* prior.

37.     The accusation of "Unsafe Conduct" against Plaintiff was utterly baseless; firstly, had CRF denied the individual a job for this minor offense committed two decades before, it would have violated N.Y. Correction Law § 752, which expressly prohibits discrimination based on a person's criminal record. Secondly, even assuming that the individual's remote possession conviction made him an unsuitable candidate, Plaintiff cannot reasonably be blamed for his hire since she had followed all the protocols in place and her involvement was limited to conducting an initial interview. The individual was also interviewed by the hiring manager and the manager's supervisor. Brice and Vice President Melendez also conducted a detailed review of the application file and signed off on his hire. Once hired, the individual had an excellent work record and at the time of his arrest had, with Brice's approval, recently been promoted.

38.     Within two months of subjecting her to this unwarranted discipline, CRF fired Plaintiff, also for pretextual reasons. On May 5, 2014, CRF's Quality Assurance employee Crista Lateiri informed Plaintiff that CRF had decided to no longer use the services of a job developer, who had worked for CRF for the past eight years. Plaintiff

emailed the job developer to tell him that she could no longer work or even communicate with him because he had apparently upset people at CRF regarding an incident occurring months earlier. Thereafter, as directed, Plaintiff had no further communications with the job developer and refused to return his phone calls or text messages. Lateiri and Lino later claimed to have had an unpleasant interaction with the job developer, for which Plaintiff was inexplicably blamed.

39.    Based upon these trumped-up charges, Defendants fired Plaintiff.

40.    At all times relevant herein, Brice used CRF in order to perpetuate a fraud, circumvent a statute, or accomplish some other wrongful or inequitable purpose.

41.    In conducting the affairs of CRF, Brice failed to comply with corporate formalities, usurped the assets of CRF for personal use, and commingled his personal assets with the assets of CRF.

42.    Brice has willfully and intentionally acted to violate the laws, rules, regulations, statutes, and wage orders cited herein, and by virtue of his position as a shareholder, director, officer, and/or manager of CRF, has assumed personal liability for the claims of Plaintiff herein.

43.    Defendants were aware that they were required to pay Plaintiff for each hour worked and at a higher overtime premium of 150% of her regular rate for each hour worked in excess of 40, but intentionally misclassified Plaintiff as a salaried worker in order to avoid paying her overtime.

44.    Despite this putative classification, Defendants had a formal policy, which they implemented, to deduct from their employees' pay if those employees were late to work, had to leave early, or took a longer lunch break.

45.     Brice participated in the establishment and maintenance of the unlawful policy that designated Plaintiff as an overtime exempt employee under the FLSA and NYLL.

46.     Defendants were aware that they were prohibited from retaliating against Plaintiff for her truthful testimony in the *Chapman-Green* litigation, but did so anyway.

47.     Brice exercised control over Plaintiff's termination.

48.     As a matter of economic reality, all Defendants were joint employers of Plaintiff and, as a result, all Defendants are individually, collectively, jointly, and severally liable for all claims made herein.

## FIRST CAUSE OF ACTION: FLSA RETALIATION

49.     Plaintiff repeats and re-alleges each and every allegation contained in this Complaint as if fully set forth herein.

50.     At all times relevant to this action, Plaintiff was employed by Defendants within the meaning of the FLSA.

52.     Defendants violated the FLSA, 29 U.S.C. § 215(a)(3), by demoting and discharging Plaintiff in retaliation for her testimony and document production in the *Chapman-Green* FLSA suit.  Defendants' retaliatory conduct was intended to chill the exercise of statutory rights under the FLSA.

53.     As a result of Defendants' willful violation of the FLSA, Plaintiff is entitled to reimbursement of lost wages, an additional equal amount as liquidated damages, interest, attorneys' fees, and costs pursuant to 29 U.S.C. § 216(b).

## SECOND CAUSE OF ACTION: NYLL RETALIATION

54.     Plaintiff repeats and re-alleges each and every allegation contained in this

Complaint as if fully set forth herein.

55.     At all times relevant to this action, Plaintiff was employed by Defendants within the meaning of the NYLL.

56.     In violation of NYLL § 215, Defendants retaliated against Plaintiff by demoting and discharging her for her testimony and document production in the *Chapman-Green* litigation.  Defendants' retaliatory conduct was intended to chill the exercise of statutory rights under the NYLL.

57.     As a result of Defendants' willful violation of the NYLL, Plaintiff is entitled to payment of lost compensation, an additional equal amount as liquidated damages, interest, attorneys' fees, and costs pursuant to NYLL § 215(2).

### THIRD CAUSE OF ACTION: FLSA OVERTIME

58.     Plaintiff repeats and re-alleges each and every allegation contained in this Complaint as if fully set forth herein.

59.     Pursuant to the applicable provisions of the FLSA, 29 U.S.C. §§ 206 and 207, and the wage orders issued under the FLSA at 29 C.F.R. § 552, Plaintiff was entitled to an overtime hourly wage of one and one half her regular hourly wage for all hours worked in excess of 40 hours per week.

60.     Plaintiff worked more than 40 hours per week for Defendants, and Defendants willfully failed to pay her the required overtime wages.

61.     As a result of Defendants' willful violation of the FLSA, Plaintiff is entitled to unpaid wages, an additional equal amount as liquidated damages, interest, attorneys' fees, and costs pursuant to 29 U.S.C. § 216(b).

## FOURTH CAUSE OF ACTION: NYLL OVERTIME

62.     Plaintiff repeats and re-alleges each and every allegation contained in this Complaint as if fully set forth herein.

63.     Pursuant to NYLL Articles 6 and 19, § 198, and the wage orders issued under the NYLL at 12 N.Y.C.R.R. §§ 137-43, Plaintiff was entitled to an overtime hourly wage of one and one half her regular hourly wage for all hours worked in excess of 40 hours per week.

64.     Plaintiff worked more than 40 hours per week for Defendants, and Defendants willfully failed to pay her the required overtime wages.

65.     As a result of Defendants' willful violation of the NYLL, Plaintiff is entitled to unpaid wages, an additional equal amount as liquidated damages, interest, attorneys' fees, and costs pursuant to NYLL §§ 198 and 663.

## FIFTH CAUSE OF ACTION: NYLL UNLAWFUL DEDUCTIONS

66.     Plaintiff repeats and re-alleges each and every allegation contained in this Complaint as if fully set forth herein.

67.     In making unauthorized deductions from Plaintiff's wages, Defendants violated NYLL § 193(1)(a), (b), which prohibits any deduction from wages of an employee unless permitted by law or authorized by the employee for certain payments made for the employee's benefit.

68.     Defendants' unlawful deductions from Plaintiff's wages was "willful" in that Defendants knowingly, deliberately, or voluntarily disregarded its obligation to pay Plaintiff her full compensation.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court grant the following

relief:

a.    Declare Defendants' conduct complained of herein to be in violation of Plaintiff's rights under the FLSA and NYLL;

b.    Award Plaintiff her unpaid and lost wages pursuant to the FLSA and NYLL;

c.    Award Plaintiff liquidated damages pursuant to 29 U.S.C. § 216 and the NYLL;

d.    Award Plaintiff prejudgment interest;

e.    Award Plaintiff attorneys' fees, costs, and disbursements in this action; and

f.    Grant such other and further relief as this Court deems necessary and proper.

## DEMAND FOR A TRIAL BY JURY

Pursuant to FRCP 38(b), Plaintiff hereby demands a trial by jury.

Dated: New York, New York
       November 21, 2014

By: _____
    Grace Cretcher
    John A. Beranbaum
    BERANBAUM MENKEN LLP
    80 Pine Street, 33rd Floor
    New York, New York 10005
    Ph: (212) 509-1616
    Fax: (212) 509-8088
    ATTORNEYS FOR PLAINTIFF

12